UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DIANE C. CUSWORTH,

        Plaintiff,
    -vs-                                    03-CV-0318

COUNTY OF HERKIMER and HERKIMER
COUNTY PUBLIC HEALTH DEPARTMENT,

        Defendants.

---

**APPEARANCES**                                  **OF COUNSEL**

HARRIS, CHESWORTH LAW FIRM        Michael P. Leone, Esq.
300 Linden Oaks
Rochester, NY 14625

BURKE, SCOLAMIERO LAW FIRM        Thomas J. Mortati, Esq.
302 Washington Avenue Extension        Gerald D. D'Amelia, Jr., Esq.
P.O. Box 15085
Albany, NY 12212-5085

NORMAN A. MORDUE, Chief Judge

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

      Presently before the Court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff alleges unlawful discrimination on the basis of a disability in violation of both the Americans with Disabilities Act ("ADA") and the New York Executive or "Human Rights" Law.

**II.    FACTUAL BACKGROUND**

      Plaintiff began working as a public health nurse with the Herkimer County Public Health

Department in 1980.  In 1987, after receiving her Masters Degree in Health Service Administration, plaintiff was promoted to the position of Supervising Public Health Nurse. In 1989, plaintiff was promoted to Assistant Director of Patient Services and in 1990, she was named Director of Patient Services.  In the position of Director of Patient Services, plaintiff worked closely with and reported directly to the Director of Public Health, Susan Campagna. As Director of Patient Services, plaintiff was "second in command" of Herkimer County's Public Health Department and ran the department when Ms. Campagna was absent.

In 1993, plaintiff began experiencing dizziness, double vision and vertigo.  She was eventually referred to a neurologist and ultimately diagnosed with Multiple Sclerosis ("MS"). In 1995, plaintiff's symptoms worsened and she suffered from significant fatigue and poor ambulation which substantially restricted her ability to work.  Between 1995 and 1997, plaintiff's condition continued to deteriorate to the point where she was unable to work full-time and was at times restricted to complete bed rest.  In 1997, plaintiff resigned her position as Director of Patient Services citing her MS as a debilitating factor.  During the seventeen (17) years she worked for the County, plaintiff was considered an outstanding employee and always received exceptionally positive reviews.

Prior to applying for the position of Director of Public Health, plaintiff's M.S. went into remission.  When she first considered applying for the position of Director of Public Health, she met with Sue Campagna to ask for her recommendation.  Plaintiff contends that she did this "because [she] knew from [her] seventeen (17) years of experience with Defendants that the legislature would never hire a candidate Ms. Campagna did not approve." Ms. Campagna asked plaintiff whether her M.S. would be an impediment to a full-time administrative position.

2

Specifically, Ms. Campagna stated to plaintiff "You haven't worked in the last two years. You're doing very well. Do you think a job of this nature would have any effect." During her deposition, Ms. Campagna was asked what she meant by this and she said "[i]f it would increase her tiredness." When pressed further regarding what she thought would cause plaintiff's "tiredness" to increase, she said "that was one of the reasons why she resigned in the beginning was because of the effects from her M.S."

Following this meeting with Ms. Campagna, plaintiff asked her neurologist to write a letter stating that her M.S. would not prevent me from performing a full-time administrative position As part of the 1999 application process, plaintiff attended two interviews on the same day. The first interview was with Sue Campagna and her senior staff from the Herkimer County Department of Public Health. The second interview was with the Human Resources Committee, the Personnel Committee, James Wallace and Sue Campagna. In the first interview plaintiff was asked if her health would be an issue. Plaintiff replied that "[she] would get sick like everyone else but that [her] M.S. would not be an issue." The County did not hire plaintiff for the position, however. The County selected Gary Rice, a physician who had served as Director of Public Health in Tioga County for a number of years. Mr. Rice was forced to resign shortly after he was hired, however, and even before assuming his job responsibilities.

The County asserts that it posted the open position of Director of Health in December 2000, and that plaintiff did not submit an application. Plaintiff states that she was not aware of this posting until either the day it expired or the day after. In any event, upon learning of the sudden departure of Mr. Rice, plaintiff telephoned Sue Campagna to say she was still interested in the position. Ms. Campagna told plaintiff she would pass her interest on to the Director of

Personnel. Plaintiff followed up her telephone call to Ms. Campagna with two letters to the Director of Personnel on January 20, 2000, and February 7, 2000. Sometime later, plaintiff learned that the County had applied for a waiver of qualifications to appoint Bernadette Garry as Director of Public Health. Plaintiff had been Bernadette Garry's supervisor while she worked as Director of Patient Services for the County. Bernadette Garry did not have the required Masters Degree or the administrative experience required to be appointed Director of Public Health, but the County sought and received a qualifications waiver to appoint her. When plaintiff learned of Ms. Garry's appointment to the position, she filed a complaint with the EEOC. Following its administrative investigation, the EEOC issued a determination that plaintiff's allegations of an ADA violation were indeed founded. To wit, the EEOC opined:

> A review of the evidence gathered during this investigation shows that although the Charging Party notified the Respondent on several occasions of her interest in the position . . . Respondent refused to seriously consider her solely because of their unfounded fears that Charging Party "would not be up to the job" because of her medical condition, although Charging party had full medical clearance from her doctor. Instead of hiring Charging party, Respondent first hired a less-qualified outside candidate and when he unexpectedly resigned, Respondent then applied to New York State for a waiver to hire Charging Party's former subordinate, as "no qualified candidates were available."

EEOC's attempt to conciliate plaintiff's claim against defendants was unsuccessful and the agency issued a Notice of Right to Sue in July 2003.

Bernadette Garry left the position of Director of Public Health and the County again posted the position in July of 2002. Plaintiff applied again for the job and was not chosen for the job. In July 2003, plaintiff applied for and was hired as Director of Public Health in Otsego County. Plaintiff asserts that defendants refused to hire her in the first instance because of her

4

M.S. in violation of the ADA. She further contends that defendants refused to hire her when the position was posted two more times in retaliation for filing a compliant with the EEOC. Defendants deny plaintiff's allegations and assert that she is not covered by the ADA in any event.

### III.    DISCUSSION

A.    Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). A trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985). It is with these considerations in mind that the Court addresses defendants' motion for summary judgment.

5

B.Americans with Disabilities Act

The ADA prohibits discrimination by covered entities, including private employers, against "qualified" individuals with a disability.  Specifically, it provides that no "covered"[1] employer shall "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).   In turn, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Accordingly, to fall within this definition one must have an actual disability, a record of a disability, or be regarded as having one.  To state a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate that: 1) he or she suffers from a disability within the meaning of the ADA, has a record of such a disability or is regarded as having one; 2) that he or she was otherwise qualified to perform his or her job or a job he or she was applying for; and 3) that he or she was not hired for the job or was discharged because of said disability.  *Wernick v. Fed. Reserve Bank of New York,* 91 F.3d 379, 383 (2d Cir. 1996).

Defendants argue in the first instance that plaintiff was not disabled within the meaning of

---

[1] The term "covered entity" means an employer, employment agency, labor organization, or joint labor-management committee.  *See* 42 U.S.C. § 12111(2)

the ADA since according to her own allegations, she was not suffering from any impairment at the time she applied for the job of Director of Public Health.  Plaintiff concedes defendants' argument on this point, but counters that she is still a qualified person under the ADA since she had a record of having a disability within the meaning of the ADA and defendants regarded her as having such a disability.  Defendants cannot seriously contest the former point given plaintiff's history of battling M.S. and her resignation due to its effect on her ability to work.  As to the latter argument, the Court finds plaintiff has raised sufficient triable questions concerning whether defendants still regarded her as having a disability at the time she applied for the job of Director of Public Health.  In addition to the comments by Supe Campagna, plaintiff has submitted an affidavit from John Gannon who alleges that Sue Campagna told him that the reason plaintiff "was not getting the job" of Director of Public Health was "because of her M.S."

     Defendants also contend that even if Sue Campagna and James Wallace who conducted the interviews for the position of Director of Health "regarded" plaintiff as having a disability she has still failed to make out a claim under the ADA since Campagna and Wallace did not make the ultimate hiring decision and there is no evidence that the County Legislature, which did make the final decision, considered plaintiff's M.S. as a hiring factor.  Again, however, the Court finds that plaintiff has raised triable questions of fact on the issue of what influence, if any, Campagna and Wallace had on the hiring decision.  Indeed, though James Wallace now claims that he had no authority or influence over whom the Legislature chose for the job he previously submitted an affidavit to the EEOC stating "it was [his] decision, along with the Human Resources Committee and Personnel Committee, as to whom to recommend to the Legislature for hiring."  Moreover, it is abundantly clear from the record in this case that Sue Campagna was intimately involved in both formulating a plan for filling the position of Director of Health and in interviewing

7

candidates for the job.  To wit, she and Mr. Wallace sent a joint letter to the New York State Department of Health stating:

>[We] have explored several options regarding the search for a
>Director of Public Health.  We feel strongly that it should be
>someone who is familiar with Herkimer County, our agencies and
>our residents.  Someone accepting our philosophy and committed to
>the needs of our residents.  Having stated the above, we are

proposing the following plan in a draft form: Current director, Sue Campagna, will remain in the Director of Public Health position until November-December 2000.  During this time, our candidate for the position, Bernadette Garry, Supervising Nurse, will mentor with Mrs. Campagna.  Ms. Garry's resume is attached.  Ms . Garry will be appointed Director of Public Health in November-December 2000.  By November-December 2000, Ms. Garry will have 2 ½ years of supervising experience and will have completed 60% of the master's program.  After resigning as Director Public Health, Mrs. Campagana will remain under contract with Herkimer County for a period of 6 to 12 months.  During this time, she will remain in weekly contact with Ms. Garry.  Ms. Garry and Mrs. Campagna have worked together for over ten years, their style of management and people skills are similar.  We feel this plan is definitely workable.  As a consultant, Mrs. Campagna's roll [sic] would be to offer recommendations in situations that may arise and will have input into the final decisions.

Given her apparent undisputed key role in finding and interviewing candidates for the job, in determining the type of candidate suitable for the position and in formulating the plan for Bernadette Garry to obtain a waiver and eventually assume the position of Director of Public Health, the Court finds plaintiff has raised sufficient questions concerning Ms. Campagna's role in the County's hiring and decision-making process.  The record demonstrates that plaintiff was apparently in possession of each of the characteristics of the ideal Director of Public Health outlined in the letter by Sue Campagna and James Wallace and that she had the required educational and administrative background required for the position.  Yet plaintiff was not chosen for the job while an unqualified candidate without a history of M.S. was.  Based upon the above and other evidence in the record, the Court finds that plaintiff has established sufficient questions of triable fact concerning whether defendants' decision not to hire plaintiff was due to unlawful disability discrimination.

**IV.   CONCLUSION**

Based on the foregoing, defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: June 28, 2006
       Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge

9